PLASTIC TOOLING AIDS LABORATORY, INC. *v.*
COMMISSIONER OF REVENUE SERVICES
(13760)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and SANTANIELLO, Js.

Argued October 31, 1989—decision released January 2, 1990

*Daniel Shepro,* for the appellant (plaintiff).

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

PETERS, C. J. The sole issue in this tax appeal is whether the plaintiff Plastic Tooling Aids Laboratory, Inc. (taxpayer), has established that its design computer qualifies for an exemption as "machinery used directly in a manufacturing . . . process" in accordance with General Statutes § 12-412 (34). After a determination by the defendant commissioner of revenue services (commissioner) that the taxpayer was liable for a deficiency assessment, the taxpayer appealed to the trial court pursuant to General Statutes § 12-422. The trial court concluded that the commissioner should prevail. We transferred the taxpayer's appeal from this adverse judgment to the Supreme Court in accordance with Practice Book § 4023. We find no error.

The facts are undisputed. The taxpayer uses a milling machine to produce aluminum and steel injection molds according to predetermined specifications. To assist in this process, the taxpayer in 1982 bought a computer known as a CAD/CAM, which stands for "computer aided design/computer aided manufacturing." The CAD/CAM translates information from blueprints into numeric design specifications that, at the time relevant to this assessment, were encoded on a paper tape. Upon its completion, the tape was physically removed from the CAD/CAM and inserted into a milling machine. While previously a personal operator had controlled the milling machine's preparation

of a mold, the tape produced by the CAD/CAM gave the milling machine the necessary instructions without further human intervention.

The taxpayer's purchase of the CAD/CAM would obligate it to pay a Connecticut sales and use tax, General Statutes § 12-411, unless this transaction qualifies for a statutory exemption under General Statutes § 12-412. Subsection 12-412 (34) specifically exempts "[s]ales of . . . machinery used directly in a manufacturing . . . process" but not sales of "office equipment or data processing equipment other than numerically controlled machinery used directly in the manufacturing process."[1] Departmental regulations define both "manufacturing" and "manufacturing production process."[2]

---

[1] General Statutes § 12-412 (34) provides: "EXEMPTIONS. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items . . . .

"(34) Machinery used in manufacturing or agricultural production. Sales of and the storage, use or other consumption of machinery used directly in a manufacturing or agricultural production process. The word 'machinery' as used in this subsection means the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery, but excluding office equipment or data processing equipment other than numerically controlled machinery used directly in the manufacturing process."

[2] Section 12-426-11b (a) (10) of the Regulations of Connecticut State Agencies provides: " 'Manufacturing' shall mean the performance as a business of an integrated series of operations which places personal property in a form, composition or character different from that in which it was acquired for sale in the regular course of business by the manufacturer. The change in form, composition or character must be a substantial change, and it must result in a transformation of property into a different product having a distinctive name, nature and use. Operations such as compounding or fabricating are illustrative of the types of operation which may result in such a change. 'Manufacturing' is an activity which shall occur solely at an industrial plant."

Section 12-426-11b (a) (11) of the Regulations of Connecticut State Agencies provides: " 'Manufacturing production process' shall mean one of a series of production activities, beginning with the movement of the raw

The trial court determined that the applicability of the § 12-412 exemption to the taxpayer's CAD/CAM purchase had raised a question that was not free from ambiguity, and that the taxpayer bore the burden of persuasion on resolving this ambiguity so as to establish its right to claim the exemption. From this vantage point, the court concluded that the CAD/CAM was "data processing equipment [which functioned as] numerically controlled machinery," but that the taxpayer had not shown that the equipment was "used directly in the manufacturing process." Accordingly, the court ruled that judgment should enter for the commissioner in an amount to which the parties had previously stipulated.

On appeal, the taxpayer maintains that the trial court erred in interpreting § 12-412 (34) to conclude that the CAD/CAM was (1) not "used directly in the manufacturing process," and (2) taxable data processing equipment rather than "equipment or devices used . . . to control, regulate or operate the machinery." In this case, there is no functional distinction between these two claims of error. Even if the taxpayer were correct that the CAD/CAM should properly have been denominated as machinery rather than as data processing equipment, the taxpayer's claim for an exemption would still have to satisfy the overarching requirement of § 12-412 (34) that the machinery was "used directly in a manufacturing . . . process." Because the sole link between the CAD/CAM and the milling machine consisted of its production of a physically discrete

---

materials after their receipt, inspection and storage, to the first production machine and ending with the completion of the finished product, including any packaging operations, for its sale to the ultimate consumer. 'Manufacturing production process' shall not include any activities prior to the first production stage (such as collecting, weighing and storing raw materials) or any activities following the last production stage (such as casing, loading or delivering to the consumer). 'Manufacturing production process' shall occur solely at an industrial plant."

imprinted tape, the issue is whether the taxpayer's CAD/CAM was "used directly" in the taxpayer's manufacturing process. For this taxpayer, that issue is the same however the CAD/CAM is characterized.

We begin our discussion of this issue by noting the principles of statutory construction that govern the availability of a tax exemption. First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption. *Stop 'N Save, Inc.* v. *Department of Revenue Services,* 212 Conn. 454, 462, 562 A.2d 512 (1989); *Harper* v. *Tax Commissioner,* 199 Conn. 133, 142, 506 A.2d 93 (1986); *The B.F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 8–9, 490 A.2d 991 (1985).

Applying these principles in this case, we conclude that the trial court was not clearly erroneous in determining, as a mixed question of fact and law, that the taxpayer's CAD/CAM was not "used directly in a manufacturing process." The CAD/CAM's end product, at the time of this litigation, was an encoded paper tape. The CAD/CAM had no direct link, electronic or otherwise, with the taxpayer's milling machine and did not directly transform the raw material that the milling machine made into injection molds. Once the milling machine received the encoded tape containing instructions from the CAD/CAM, a separate unit, known as a DAC interface control, was required to convey these instructions electronically to the milling machine for operational purposes.

Although the taxpayer does not dispute the accuracy of this factual recitation, it contends that anything that affects the process of the production line as a whole

can come within the category of "used directly in a manufacturing process." The taxpayer maintains that it was not required to show that the CAD/CAM directly affected the raw material that its milling machine would ultimately manufacture into molds. Comparing the regulation for tax exemptions for tools with that governing tax exemptions for machinery, it notes that only tools are expressly required to be used "in the operation of machines for the purpose of *producing a direct effect upon the product* being manufactured" (emphasis added); Regs., Conn. State Agencies § 12-426-11b (a) (13); while machinery may be used in a "manufacturing production process" in any "one of a series of production activities." Regs., Conn. State Agencies § 12-426-11b (a) (11). The taxpayer reminds us that this court, in *United Aircraft Corporation* v. *Connelly,* 145 Conn. 176, 186, 140 A.2d 486 (1958), held that X-ray films, testing chemicals, oil and gasoline qualified for the exemption contained in an earlier sales tax statute, General Statutes (Cum. Sup. 1955) § 1167d, for "personal property . . . used directly . . . in the process of the manufacture of tangible personal property to be sold," even though the plant manufactured and sold airplanes. Thereafter, in *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 496, 423 A.2d 129 (1979), we held that electricity used in the process of manufacturing ice milk was used and consumed " 'directly . . . in an *industrial plant* in the actual fabrication of the finished product to be sold.' " (Emphasis in original.) Id., quoting General Statutes (Rev. to 1977) § 12-412 (r). We find these arguments unpersuasive both as a matter of fact and as a matter of law.

As a factual matter, on the present record the trial court was entitled to find that the absence of any direct linkage between the CAD/CAM and the milling machine served to defeat the taxpayer's claim to the statutory exemption. The production of encoded tape

could reasonably be found to be akin to the production of blueprints or other design documents, all of which are preliminary to the manufacturing process, rather than "used directly" therein.[3]

As a legal matter, the taxpayer's argument overlooks the regulatory changes that have, since 1980, imposed additional limitations upon the exemption provided in § 12-412 (34). In *Connecticut Water Co.* v. *Barbato,* 206 Conn. 337, 343, 537 A.2d 490 (1988), we concluded that the regulation presently defining "manufacturing"; Regs., Conn. State Agencies § 12-426-11b (a) (10); validly requires a taxpayer claiming an exemption for machinery "used directly in a manufacturing . . . process" to prove a direct connection with a process that results in the substantial transformation of the " 'form, composition or character' " of personal property. Id., 343 n.6.[4] This circumscribed regulatory definition of "manufacturing" narrows the scope of the statutory exemption for machinery "used directly in a manufac-

---

[3] Other courts have held that computers were not used directly in manufacturing when they produced: photographs for customer approval prior to production; *Rhode Island Lithograph Corporation* v. *Clark,* 519 A.2d 589, 591 (R.I. 1987); software resulting in the production of magnetic tapes; *Interactive Information Systems, Inc.* v. *Limbach,* 18 Ohio St. 3d 309, 311, 480 N.E.2d 1124 (1985); production schedules for the manufacturing process; *W. N. Dambach, Inc.* v. *Commonwealth of Pennsylvania,* 488 A.2d 96, 98–99 (Commw. Ct. 1985); compilations of plant information and instructions; *Commonwealth* v. *Kuhlman Corporation,* 564 S.W.2d 14, 16 (Ky. 1978); and magnetic tapes containing customer and payroll information. *Wesleyan University Press, Inc.* v. *Donahue,* 8 Ohio St. 2d 4, 5, 221 N.E.2d 590 (1966). Although each of these cases interprets statutes that differ in some particulars from our own, they confirm the significance of a distinction between ancillary functions that facilitate the operation of an industrial plant and the transformation of personal property that constitutes the manufacturing process.

[4] The taxpayer has not challenged the validity of the regulations promulgated to clarify the exemptions provided by General Statutes § 12-412. *Connecticut Water Co.* v. *Barbato,* 206 Conn. 337, 344, 537 A.2d 490 (1988); *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 600, 522 A.2d 771 (1987).

turing . . . process" to one that is less inclusive than it was when *United Aircraft Corporation* and *Ziperstein* were decided.[5] Id. The regulatory definition of "manufacturing" also limits the scope of "manufacturing production process" in § 12-426-11b (a) (11) of the Regulations of Connecticut State Agencies. Read conjointly, these regulations make the statutory exemption available only upon a showing that the machinery at issue is used in "one of a series of production activities" that results in a substantial change in the "form, composition or character" of personal property. So construed, the regulations governing the exemption for machinery are not, in principle, inconsistent with the regulation defining the exemption for tools. In both cases, the statutory exemption turns upon effecting a change in the product being manufactured.

We therefore agree with the trial court's conclusion, insofar as it was based on a construction of the applicable statute and regulations, that the taxpayer has failed to prove that its CAD/CAM was "used directly in a manufacturing process."

There is no error.

In this opinion the other justices concurred.

---

[5] Furthermore, at oral argument, the taxpayer conceded that the statutory exemption construed in *United Aircraft Corporation* v. *Connelly*, 145 Conn. 176, 140 A.2d 486 (1958), arose under a different sales and use tax than the one presently in effect.