PLASTICRETE BLOCK AND SUPPLY CORPORATION *v.*
COMMISSIONER OF REVENUE SERVICES
(13931)

PETERS, C. J., CALLAHAN, COVELLO, HULL and BORDEN, Js.

Argued May 29—decision released July 31, 1990

*Emily N. Roisman,* with whom was *Michael E. Satti,* for the appellant (plaintiff).

*Jonathon L. Ensign,* assistant attorney general, with whom was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

BORDEN, J. The dispositive issue in this appeal is whether the trial court properly allocated to the plaintiff taxpayer the burden of overcoming a presumption of taxability, as "gross receipts" under General Stat-

utes § 12-407 (9),[1] of certain delivery charges collected by the plaintiff. The defendant commissioner levied a deficiency assessment against the plaintiff for delivery charges collected in conjunction with the sale of the plaintiff's custom-made concrete blocks for the period October 1, 1980, to September 30, 1983. The plaintiff appealed to the Superior Court. Thereafter, the plaintiff

[1] General Statutes § 12-407 (9) provides: " 'Gross receipts' means the total amount of the sales price, of the retail sales of retailers, or the total amount of the rent received for occupancy or the total amount received for any service rendered on or after July 1, 1975, or the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term or any such lease or rental occurring on or after July 1, 1975, valued in money, whether received in money or otherwise, without any deduction on account of any of the following: (a) The cost of the property sold; however, in accordance with such regulations as the commissioner of revenue services may prescribe, a deduction may be taken if the retailer has purchased property for some other purpose than resale, has reimbursed his vendor for tax which the vendor is required to pay to the state or has paid the use tax with respect to the property, and has resold the property prior to making any use of the property other than retention, demonstration or display while holding it for sale in the regular course of business. If such a deduction is taken by the retailer, no refund or credit will be allowed to his vendor with respect to the sale of the property; (b) the cost of the materials used, labor or service cost, interest paid, losses or any other expense; (c) the cost of transportation of the property prior to its sale to the purchaser. The total amount of the sales price includes all of the following: (a) Any services that are a part of the sale; (b) all receipts, cash, credits and property of any kind; (c) any amount for which credit is allowed by the seller to the purchaser. 'Gross receipts' do not include any of the following: (a) Cash discounts allowed and taken on sales; (b) any portion of the sales price of property returned by customers, which upon rescission of the contract of sale is refunded either in cash or credit, provided the property is returned within ninety days from the date of sale; (c) the amount of any tax, not including any manufacturers' or importers' excise tax, imposed by the United States upon or with respect to retail sales whether imposed upon the retailer or the consumer; (d) transportation charges separately stated, if the transportation occurs after the sale of the property is made to the purchaser; (e) the amount charged for labor rendered in installing or applying the property sold, provided such charge is separately stated and exclusive of such charge for any service rendered within the purview of subparagraph (K) of subsection (2) of this section." This statute has been amended, effective October 1, 1989, by Public Acts 1989, No. 89-123, § 2.

brought a declaratory judgment action against the commissioner challenging his declaratory ruling that certain language that the plaintiff added to its invoices and delivery forms in July, 1984, did not operate to exclude those charges from future taxes.[2] The trial court dismissed the appeal, and rendered a declaratory judgment that the delivery charges were subject to taxation. The plaintiff filed a consolidated appeal to the Appellate Court, and we transferred the case to ourselves pursuant to Practice Book § 4023. We reverse the judgments of the trial court, and remand for a new trial.

The facts are either stipulated or undisputed. The plaintiff, a Connecticut corporation with its principal place of business in North Haven, engages in the manufacture and sale of custom masonry products for construction, including the production of blocks specially manufactured according to customer order. Once the plaintiff begins production of custom orders, a purchaser is responsible for payment, and may not cancel an order or return a portion for credit. Additionally, as soon as an order is completed, the plaintiff stacks the blocks in its yard on individual pallets labeled by customer name until pick-up or delivery. As part of its business practice, the plaintiff maintains nine trucks to transport the blocks to customers who want delivery for an additional price calculated separately from the cost of the blocks. This separate delivery charge is specified on the plaintiff's quotation/acceptance form and order form, and, since 1984, language on invoices and delivery tickets states that "purchase and sales of goods shall be deemed to have taken place at time of

[2] The court consolidated the two actions for trial. In the first action, the plaintiff appealed the deficiency tax assessment of the then present tax commissioner, Orest T. Dubno. In the second action, the plaintiff requested a declaratory judgment reversing the adverse declaratory ruling of the subsequent tax commissioner, Timothy F. Bannon.

loading upon the carrier; purchaser shall thereafter have the sole responsibility for payment thereof and the risk of any loss thereof." The quotation/acceptance form also quotes prices for the blocks "F.O.B. North Haven yard." Approximately 75 percent of purchasers of custom-made blocks request that the plaintiff deliver the blocks, while the remaining 25 percent transport the blocks themselves.[3] The sales tax in issue in this case is applicable, if at all, only to the charges for delivery of custom-made concrete blocks by the plaintiff to its customers.

In order to clarify the controversy, some background to the sales tax statutes is required. A tax is imposed upon a taxpayer for the sale of goods or services at retail. General Statutes § 12-408. A "sale" is defined, in relevant part, as "[a]ny *transfer of title,* exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration . . . ." (Emphasis added.) General Statutes § 12-407 (2).[4] The "sales price" is "the total amount for which tangible personal property is sold . . . ." General Statutes § 12-407 (8).[5] The amount of sales tax that is required to be paid, however, is not based upon the sales price alone, but rather upon "gross receipts." General Statutes § 12-407 (9); see footnote 1, supra.

---

[3] Although the trial court stated that the plaintiff "usually delivers the finished bricks" and "[o]ccasionally . . . uses a common carrier for delivery and occasionally the customer picks them up," the undisputed testimony at trial indicated that, in fact, one quarter of all custom-made blocks were typically picked up by customers, and three quarters were typically delivered.

[4] General Statutes § 12-407 (2) provides in pertinent part: "(2) 'Sale' and 'selling' mean and include: (a) Any transfer of title, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration . . . ."

[5] General Statutes § 12-407 (8) provides in pertinent part: " 'Sales price' means the total amount for which tangible personal property is sold."

"Gross receipts," as defined in § 12-407 (9), includes some, but not necessarily all, of the total charges received by the seller. Under § 12-407 (9) (c), " '[g]ross receipts' means the total amount of the sales price . . . without any deduction on account of any of the following . . . (c) the cost of transportation of the property *prior to its sale* to the purchaser." (Emphasis added.) Under § 12-407 (9) (d), however, " '[g]ross receipts' do not include any of the following . . . (d) transportation charges separately stated, if the transportation occurs *after the sale* of the property is made to the purchaser." (Emphasis added.) A sales tax is thereafter imposed upon the "gross receipts" figure. General Statutes § 12-408 (1).

The legal issue presented to the trial court, therefore, was whether the plaintiff's delivery charges represented fees for transportation *prior* to its sale under § 12-407 (9) (c), and thus were includable in "gross receipts," or whether the delivery charges represented transportation costs *after* sale under § 12-407 (9) (d), so that the costs would not be includable in "gross receipts." That issue distilled into the question of whether title to the blocks passed to the plaintiff's customers upon delivery to them, as the commissioner claimed, or prior to delivery, as the plaintiff claimed. The question of passage of title turns on the factual determination of the intent of the parties, as disclosed by the objective factual evidence of their contractual arrangements. *New England Petroleum Corporation* v. *Groppo,* 214 Conn. 444, 450, 572 A.2d 970 (1990); *New England Yacht Sales, Inc.* v. *Commissioner,* 198 Conn. 624, 632, 504 A.2d 506 (1986).

The trial court resolved this factual issue in the defendant's favor. The court, in determining the question of whether title to the blocks passed prior or subsequent to delivery, followed the test set forth in the Uniform Commercial Code, which provides that title

passes from the seller to the buyer "in any manner and on any conditions explicitly agreed on by the parties." General Statutes § 42a-2-401 (1). In evaluating the evidence presented on passage of title, the court relied on the provision in General Statutes § 12-410 (1) that "all gross receipts are subject to the [sales] tax until the contrary is established."[6] The court also applied the rule of construction that "statutes which exempt from taxation are to be strictly construed against the party claiming an exemption." The court, therefore, in determining the issue of when title passed, imposed on the plaintiff the burden of these presumptions in order for it to prevail. The court concluded that "[t]he legal presumptions against the plaintiff have not been overcome by virtue of the evidence and stipulation of facts presented to the court." Accordingly, the court dismissed the plaintiff's appeal, and rendered a declaratory judgment that the plaintiff's transportation charges were includable in the definition of "gross receipts," and, therefore, taxable.[7]

The plaintiff claims that: (1) the trial court incorrectly imposed upon it the presumption of taxability applica-

---

[6] General Statutes § 12-410 provides in pertinent part: "PRESUMPTIONS AND RESALE CERTIFICATES. (1) PRESUMPTION OF TAXABILITY; RESALE CERTIFICATE. For the purpose of the proper administration of this chapter and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property or service is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

[7] In a motion to reargue, the plaintiff claimed, inter alia, that the trial court incorrectly relied upon preprinted paragraphs in the plaintiff's forms that applied to noncustomized blocks, and that the trial court incorrectly failed to conclude that the F.O.B. language in its forms required a finding that title passed at the plaintiff's yard. Although the court amended its decision to exclude the references to the preprinted paragraphs dealing with the noncustomized blocks, it reaffirmed its conclusion that title did not pass prior to delivery and that the F.O.B. language was "by no means conclusively determinative" of passage of title.

ble under § 12-410 (1), and the rule of law regarding tax exemptions; and (2) the court was required as a matter of law to conclude, based upon its findings, that title to the plaintiff's custom-made blocks had passed to the purchasers prior to delivery due to the plaintiff's manner of conducting business and due to the language added to its forms in July, 1984. We agree with the first claim, but not with the second.

In reviewing trial court proceedings, we may reverse or modify the decision of the trial court only if we determine that "the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law." Practice Book § 4061; *New England Petroleum Corporation* v. *Groppo,* supra, 450. A trial court's factual conclusion is "reviewable and may be successfully attacked if the record reasonably discloses that the court applied an erroneous principle of law in evaluating the evidence . . . as a basis for its conclusions." *Velsmid* v. *Nelson,* 175 Conn. 221, 224, 397 A.2d 113 (1978).

The plaintiff first claims that the court, in determining whether the plaintiff's delivery charges were taxable as gross receipts, incorrectly imposed upon it the presumption of taxability under § 12-410 (1), as well as the rule of law that claims of tax exemptions must be strictly construed against the taxpayer. We agree. At trial, the plaintiff asserted that its delivery charges were incurred after title to the custom-made blocks passed to the purchasers due to the "F.O.B. North Haven yard" provision in its forms, the identification of the goods to the customer during and after production, and its practice of providing delivery only where requested and for a separately calculated price. The plaintiff claimed that, under the provisions of § 12-407 (9), its charges were not part of its "gross

receipts.'' We conclude that these claims involve an objection to the imposition of a tax, and do not seek a tax exemption.

The amount of sales tax required to be paid by a taxpayer may be reduced by exemptions to the tax statutes set forth in General Statutes § 12-412 (1) through (62). An exemption is deducted from the total gross receipts of the seller, and '' ' ''is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others.'' ' '' *United Church of Christ* v. *West Hartford,* 9 Conn. App. 448, 453, 519 A.2d 1217 (1987), aff'd, 206 Conn. 711, 539 A.2d 523 (1988); *Lyman* v. *Adorno,* 133 Conn. 511, 516, 52 A.2d 702 (1947). ''[S]tatutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer.'' *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner,* 213 Conn. 365, 369, 567 A.2d 1218 (1990). ''[A]ny ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer . . . [and] the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption.'' Id. On the other hand, when a taxpayer's claim ''concerns the imposition of a tax rather than a claimed right to an exemption or a deduction, the issue must be resolved by strictly construing the statute against the taxing authority and in favor of the taxpayer.'' *Texaco, Inc.* v. *Groppo,* 215 Conn. 134, 137, 574 A.2d 1293 (1990); *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 588, 522 A.2d 731 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 421, 521 A.2d 569 (1987).

Section § 12-412 (1) through (62) sets forth explicitly allowable exemptions, and the plaintiff's claim does not fall within any of the delineated categories. Furthermore, the plaintiff's claim is based upon the language

of § 12-407 (9) (d), which clearly states that " '[g]ross receipts' do not include . . . transportation charges separately stated, if the transportation occurs after the sale of property is made to the purchaser." This language is definitional in nature, and serves to determine whether certain charges are taxable, not whether certain charges that are ordinarily taxable should be exempt from taxation as a matter of legislative grace.

The plaintiff was entitled, therefore, to have the evidence evaluated in accordance with the rule that where the claim involves "the imposition of a tax rather than a claimed right to an exemption or a deduction, the issue must be resolved by strictly construing the statute against the taxing authority and in favor of the taxpayer." *Texaco, Inc.* v. *Groppo,* supra, 137; *Texaco Refining & Marketing Co.* v. *Commissioner,* supra, 588; *Schlumberger Technology Corporation* v. *Dubno,* supra, 421; *The B.F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 8–9, 490 A.2d 991 (1985). By applying to the evidence concerning the passage of title to the blocks the rule of construction regarding tax exemptions, the court applied an erroneous principle of law. *Velsmid* v. *Nelson,* supra, 224.

The defendant argues that the court properly placed the burden of rebutting the presumption of taxability on the plaintiff because the first sentence of § 12-410 (1) provides that "it shall be presumed that all gross receipts are subject to the tax until the contrary is established." The commissioner asserts that because § 12-410 (1) clearly refers to "all gross receipts," and § 12-407 (9) defines only "gross receipts," the definition of "gross receipts" is inapplicable to the term "all gross receipts." We disagree.

The first sentence of § 12-410 does no more than restate the fundamental rule that a taxpayer who challenges the assessment of a tax bears the general bur-

den of proof. See *Stop 'N Save, Inc.* v. *Department of Revenue Services,* 212 Conn. 454, 462, 562 A.2d 512 (1989); *New England Yacht Sales, Inc.* v. *Commissioner,* supra, 634. In that sense, it is "presumed that all gross receipts are subject to the tax until the contrary is established." But that general proposition does not alter the requirement that it must first be determined whether certain charges are within the statutory definition of "gross receipts" under § 12-407 (9).

The defendant's argument demonstrates a strained reading of an unambiguous statute. Where "the legislation itself contains a specific definition, the courts are bound to accept that definition." *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 536–37, 469 A.2d 382 (1983); *Danbury* v. *Corbett,* 139 Conn. 379, 384, 94 A.2d 6 (1953). The term "gross receipts" is specifically set forth under the "Definitions" section of the sales and use tax provisions; General Statutes § 12-407; which requires that the reader resort to that definition "[*w*]*henever* used in this chapter . . . . " (Emphasis added.) "It is basic, of course, that a statute is to be construed as a whole and that the words used therein must be interpreted in their plain and ordinary meaning 'unless the context indicates that a different one was intended.' *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981)." *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986). Furthermore, " 'the principle of construction everywhere applied . . . [is] that when a statute uses a word in a certain sense, it is to be presumed to have been used in the same sense in all other parts of the statute wherever it occurs.' *Beacon Falls* v. *Seymour,* 44 Conn. 210, 217 (1876)." *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 324, 488 A.2d 778 (1985). Clearly, merely by the addition of "all," the legislature

did not intend a meaning to attach to "all gross receipts" in § 12-410 different from the statutorily defined meaning in § 12-407.[8]

The plaintiff also claims that the trial court should have concluded as a matter of law, based upon the evidence presented, that its manner of conducting business and the language added to its forms in 1984 were sufficient to pass title *prior* to delivery, thereby removing these charges from the definition of "gross receipts" and rendering them not subject to tax. We are not persuaded.

In determining whether title has passed, the court should examine the entire contractual transaction between the parties for their objective factual intent. *New England Petroleum Corporation* v. *Groppo,* supra; *New England Yacht Sales, Inc.* v. *Commissioner,* supra, 632. "The intention of the parties is, in turn, a question of fact." *A. Dubreuil & Sons, Inc.* v. *Lisbon,* 215 Conn. 604, 1609, 577 A.2d 709 (1990); *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 130, 523 A.2d 1266 (1987); *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 199, 520 A.2d 508 (1987). It is therefore a question of fact in this instance whether the plaintiff's manner of conducting business and the terms added to the plaintiff's forms in 1984 were sufficient to transfer title of the blocks prior to delivery.

---

[8] The defendant also claims the benefit of the second sentence of General Statutes § 12-410 (1). The second sentence in § 12-410 (1), however, deals with whether a particular sale is a sale at retail. It does not help the defendant because the question of whether the sale of the blocks was at retail is not at issue in this case. Therefore, a straightforward reading of § 12-410 (1) in conjunction with the chapter definition provided in General Statutes § 12-407 (9) refutes the defendant's argument that the trial court properly placed the burden of the presumption of taxability upon the plaintiff.

We do not mean to suggest, however, that an inference concerning the passage of title in favor of the plaintiff must be drawn on rehearing. In this case, there was evidence that supported both the plaintiff's assertion that title passed prior to delivery and the defendant's assertion that title passed after delivery. The inference of when title passed is one of fact to be drawn by the trial court pursuant to the appropriate rules and unburdened by inapplicable presumptions.

The judgments are reversed and the case is remanded to the trial court for a new trial.

In this opinion the other justices concurred.