[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Grolier Enterprises appeals, pursuant to Conn. Gen. Stats. 12-422, from a denial by the defendant Commissioner of Revenue Services of plaintiff's claim for a refund of Connecticut use taxes previously paid under protest. The issue is whether or not the plaintiff's acquisition from brokers of mailing lists on magnetic tapes, used by the plaintiff in the promotion of its products, is subject to the Connecticut use tax imposed by 12-411 on the rental of tangible personal property. The court concludes the plaintiff's acquisition is not that of tangible personal property, is not subject to the use tax, and plaintiff is entitled to a refund of the use taxes paid under protest.
The facts stipulated by the parties and found by this court after a hearing are as follows: The plaintiff engages in the business of selling children's books and educational materials by direct mail to its customers throughout the United States and around the world. In conducting its promotional mailings plaintiff uses the names and addresses obtained from mailing lists acquired from mailing-list brokers. It attempts to direct its materials particularly to upper income, educated parents of young children. Typically, the lists acquired are the subscription lists of magazines such as Parents Magazine or Architectural Digest. They are provided on magnetic tapes, each tape ten and one-half inches in diameter and one-half inch in width and each containing from 20,000 to 200,000 names and addresses. The plaintiff is required to return the tapes to the broker without alteration. The information on the tapes could be transmitted to plaintiff's computer by telephone or in the form of typed lists.
The arrangement between the plaintiff and brokers is that plaintiff acquires the right to use the lists for a single promotional mailing at a fee ranging from $40 to $55 per thousand names, and the broker agrees not to allow anyone else to use the lists during a fixed period, usually two weeks before and after plaintiff's designated promotional mailing date. The broker includes names of its employees on the list to detect whether lists are used for more than the single mailing.
The plaintiff submits the lists it acquires from various brokers to a computer activity known as "merge and purge" in which names and addresses are compared and assimilated so as to eliminate duplicates, plaintiff's existing customers, and those with prior credit or other problems. The resultant list is stored on plaintiff's own magnetic tape and sequenced in zip code order. Plaintiff sends its tape or a print-out of the tape to out-of-state mail houses which package plaintiff's promotional material and do the actual mailing to plaintiff's CT Page 1915 potential customers.
Over the tax period in question, November 1, 1980 through March 31, 1986, plaintiff paid for mailing lists a total of $2,694,016. The value of the tapes alone, from which the mailing lists were gleaned, ranged from five to fifteen dollars each.
On August 4, 1986, Tax Commissioner assessed the plaintiff for the tax period a total of $291,538.03, of which $202,051.23 consisted of use taxes and $89,486.80 of interest. Plaintiff timely filed a petition for reassessment pursuant to12-418 and paid under protest $294,663.67, the tax called for by the assessment, plus interest computed to October 1, 1986. Defendant denied plaintiff's petition for reassessment. Plaintiff filed a formal claim for refund which was denied by defendant on April 27, 1987, and plaintiff thereupon timely appealed that denial to this court, pursuant to 12-422.
The defendant based its decisions on the ground that plaintiff's acquisition from brokers of magnetic tapes containing mailing lists constituted a rental of tangible personal property properly taxable under 12-411(2). Plaintiff contends that the essence of its transactions with its brokers was the intangible right to use the information on the tapes, the tapes themselves being inconsequential, and so the transactions are not subject to the use tax.
Section 12-411, entitled "The use tax", imposes an excise tax "on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer . . ." (underlining added). "Purchase" is defined in 12-407(7)(f) to include "any leasing or rental of tangible personal property" (underlining added). "Tangible personal property" is defined in 12-407(13) to mean "personal property which may be seen, weighed, measured, felt or touched or which is in any other manner perceptible to the senses."
Since the issue before the court is "the imposition of a tax rather than a claimed right to an exemption or deduction, the issue must be resolved by strictly construing the statute against the taxing authorities and in favor of the taxpayer." Texaco, Inc. v. Groppo, 215 Conn. 134, 137 (1990); Plasticite Block Supply Corp. v. Commissioner, 216 Conn. 17, 25 (1990). Also, "because this case is an appeal from an adverse ruling of the commissioner of revenue services, the plaintiff is entitled to a plenary review of its challenge of its tax assessment, and is not limited to an administrative appeal under the Uniform Administrative Procedure Act." Texaco Refining Marketing Co. v. Commissioner, 202 Conn. 583, 588 (1987). CT Page 1916
In Columbia Pictures Industries v. Tax Commissioner,176 Conn. 604 (1979) the Supreme Court established the rule that when the question under the sale or use tax is whether a transaction involved tangible personal property or intangible property rights the court would look to the real object of the transaction. In that case the issue was whether the rental of a motion picture film from the distributor to an exhibitor was subject to a sales tax. The distributor claimed the essence of the transaction was the license to exhibit publicly what was on the film and therefore the transfer of an intangible right. The tax commissioner contended the essence of the transaction was the rental of the film itself which was tangible personal property subject to the use tax. The Supreme Court agreed with the tax commissioner, holding "the plaintiff's object was to acquire possession of the film in its finished state in order to reproduce it for profit rather than to acquire the services performed in producing the film." 176 Conn. at 610.
Dine Out Tonight Club, Inc. v. Dept. of Revenue Services, 210 Conn. 567 (1989) involved whether or not a sales tax could be imposed on membership fees charged by a club which offered its members one free meal with the purchase of a second meal and also gave them a card evincing membership and a directory of restaurants participating in the plan. The Supreme Court stated, "A conclusion as to whether the sales tax is applicable to the plaintiff's membership fees requires a determination of the true object of the transaction between the club and its members." 210 Conn. at 571 (underlining added). It held membership fees were not subject to Connecticut's sales tax because "the sine qua non of the transaction between the club and its members is the intangible right to receive free meals and access to the knowledge of an expanding list of restaurants that provide them . . . . The membership cards and directory are merely indicia of that intangible right and incidental to its exercise." id. at 572.
In the instant case the plaintiff's object in dealing with mailing list brokers is to obtain the right to use the names and addresses on the lists it acquires for its promotional mailings. It selects lists based on the income levels and educational profiles of the names on the list most likely to produce customers. It is not concerned with the make or physical quality of the magnetic tapes containing the names and addresses. The essence of the transaction is the utilization of the lists, the tapes being inconsequential.
Directly in point is Spencer Gifts, Inc. v. Director, Division of Taxation, 440 A.2d 104 (N.J. Tax Court, 1981), cited with approval in Dine Out Tonight Club, Inc. v. Dept. of CT Page 1917 Revenue Services, supra at 572-73. In Spencer the New Jersey Tax Court held that the leasing of mailing lists is not subject to sales or use tax because the transaction involves a leasing of information, not tangible personal property. "The tapes which are tangible personal property and which transmit the information are only incidental to the underlying transaction between the parties. . . . The tapes are an inconsequential part of the transaction whose real object is the obtaining of mailing list information." 440 A.2d at 118.
In Fingerhut Products Co. v. Revenue Comm'r,258 N.W.2d 606 (Minn.Sup.Ct. 1977) the Minnesota Supreme Court reached the same conclusion that leasing mailing lists was not subject to a use tax because the physical form of mailing lists is incidental to the use of the "incorporeal information contained in those lists . . . . Such use, in our opinion, is not taxable under the current statute." 258 N.W.2d at 610.
In Northeast Datacom Inc. v. Wallingford, 212 Conn. 639
(1989) our Supreme Court held that computer software is intangible personal property and so not subject to municipal taxation of tangible personal property under 12-71. In reaching this conclusion the court took into account that the software in question cost $2,756,740 and the magnetic discs and tapes on which the computer information was stored cost approximately $1000. In the instant case there is also a significant disparity between the value of the 20,000 to 200,000 names on a tape at between $40 and $55 per thousand names and the value of the tapes themselves at from $5 to $15 per tape. This fact confirms the insignificance of the tapes and the fallacy of defendant claiming them as property upon which to base its assessment against the plaintiff.
The court concludes that plaintiff is entitled to a refund of the use taxes paid under protest, with interest, and, accordingly, plaintiff's appeal is sustained.
ROBERT SATTER STATE TRIAL REFEREE