[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPEAL
This is an appeal from a decision of the Statewide Grievance Committee dated June 16, 1988, ("Committee Decision") reprimanding Attorney John A. Parese after finding that he had violated 8.4(c) of the Rules of Professional Conduct. At the hearing before this court on December 22, 1992, plaintiff filed an amended complaint, essentially limited to the claim that the committee's decision was illegal and an abuse of its discretion.
 I
This court has jurisdiction to hear this appeal, all the requirements of Sec. 27N of the Practice Book having been met, and the plaintiff John A. Perese is an aggrieved party.
 II
The standard of proof applicable in determining whether an attorney has violated the code of professional responsibility is clear and convincing evidence. Statewide Grievance Committee v. Presnick, 18 Conn. App. 475, 477 (1989). However, the basic facts are not in dispute and neither party has taken issue with the findings made by the reviewing committee of the Grievance Committee, after hearing on April 20, 1988, and contained in its five page "Proposed decision," undated, but adopted by the Grievance Committee on June 16, 1988. A summary of these facts follows:
On August 26, 1987, Mrs. Nancy Clark brought an unsigned purchase agreement for her Hamden residence to plaintiff's office for his review. The document had been prepared by Barry Pinkus, attorney for the Complainants Theodore and Nancy Arotsky ("Complainants") which called for a purchase price of $120,000 and a closing date of November 15, 1987 and was accompanied by a deposit check for $750. Plaintiff telephoned Attorney Pinkus' office, spoke to his partner Attorney Frank Pietrosimone, and identified himself as Mrs. Clark's attorney. They discussed various terms set forth or needed in the document and Attorney Pietrosimone said he would get back to plaintiff. Plaintiff then discussed the matter with Mrs. Clark, ascertained she preferred a closing by September 15, 1987, and indicated that he had a client Timothy Nolan who might be interested in buying the property. He called Mr. Nolan, with Mrs. Clark's permission, and arranged to have him view the property that night. CT Page 3835
The next day, August 27, Nolan expressed an interest in the property, contacted his bank and asked plaintiff to join in the purchase of the property and to co-sign the bank mortgage. Concerned by a possible conflict of interests, plaintiff asked Nolan to call Mrs. Clark, who expressed an interest in the new offer but some uncertainty about changing attorneys. Plaintiff then called Mrs. Clark, explained the conflict and recommended she obtain new counsel, mentioning Attorney Anthony Elia and perhaps one other. The same day, plaintiff called Attorney Elia, explaining the conflict, and advising him of Complainants' offer and his new position as co-purchaser. Attorney Elia, after calling Mrs. Clark and arranging to meet her on September 1, 1987, advised plaintiff he now represented Mrs. Clark.
On August 28, 1987, plaintiff prepared a new contract for the property, which was signed by him and Nolan and then hand delivered with a $5,000 deposit check to Attorney Elia's office. The document provided for a purchase price of $125,000, a $25,000 purchase money mortgage and a closing date of September 15, 1987.
On August 31, plaintiff received a call from Attorney Pietrosimone, returned the call, but was unable to reach him. When Attorney Pietrosimone returned the call on September 1, plaintiff advised him of the situation and that Attorney Elia was now representing Mrs. Clark. Attorney Pietrosimone called Complainants and had them deliver a revised contract to Attorney Elia's office, but Mrs. Clark went on to sign the contract with Nolan and plaintiff apparently on the same day. A closing of the premises took place from Mrs. Clark to the plaintiff and Nolan on September 15, 1987 pursuant to the terms of their written offer. Evidence was received that a few weeks after the closing plaintiff and Nolan placed newspaper ads offering to sell the property for $169,000 to $175,000.
 III
Complainants charge that plaintiff, by misrepresenting his position to them, effectively prevented them from making an offer on the property, competitive both in terms of price and date of closing, which might have been more advantageous to Mrs. Clark.
Indeed the Committee Decision concluded that plaintiff engaged in conduct amounting to a misrepresentation under CT Page 3836 Rule 8.4(c) when he failed to notify Complainants' counsel of the changed circumstances of his role in the pending transaction, i.e., that he was no longer acting as Mrs. Clark's attorney but had, in fact, become an interested purchaser of her property, and that because of this failure and the "rushed nature" of the transaction Complainants "were denied a timely opportunity to present a competitive offer on the property."
The decision noted that Complainants' counsel learned of the new situation "essentially by chance" when he phoned the plaintiff.
 IV
An appeal from the Decision of the Statewide Grievance Committee to reprimand is authorized under Practice Book 27N, which in subsection (f) sets forth the scope of review by the superior court. This court is required to affirm the decision of the committee unless the court finds that substantial rights of the appellant have been prejudiced because the committees findings, inferences, conclusions or discussions fall into six listed categories under subsection (f). Plaintiff concedes that under Pinsky v. Statewide Grievance Committee, 216 Conn. 28, 234
(1980) this court is limited to a review of the record to determine if the facts as found are supplied by the evidence in the record and whether the conclusions that follow are legally correct. His appeal claims that the decision of the committee was illegal and an abuse of its discretion, which claims fall generally under the scope of categories (3), (4), (5) and (6) of subsection (f) of 27N.
 V
Plaintiff argues firstly that he had no duty to notify Complainant or his attorney of these changed circumstances and secondly, even if he had such a duty, it was discharged when he called Attorney Elia and notified him of the situation and thirdly, that the misrepresentation prohibited by 8.4(c) must be intentional or contain some "scienter" on the part of an attorney.
This case illustrates the difficulties which may arise when an attorney becomes financially involved in a transaction in which he originally acted as an attorney for one of the parties. Once the plaintiff was consulted by Mrs. Clark on her pending CT Page 3837 real estate sale, a professional relationship was established. The knowledge plaintiff acquired under the tent of that relationship, both as to the proposed contract with Complainants' and Mrs. Clark's financial requirements and her time schedule was confidential and privileged and could not be used for his own advantage, without full disclosure to Mrs. Clark and to all persons then dealing with her.
"Misrepresentation" has been defined as "any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Blacks Law Dictionary, Fourth Ed. Where a party is under a duty to disclose facts and fails to do so, such failure has sometimes been referred to as "passive misrepresentation," and under various circumstances may result in liability against that party. See, Rest.2d Torts, 551(2) and 529 (1977); Rest.2d Contracts, 160, 161 (1977).
There is no requirement under rule 8.4(c) that the prohibited misrepresentation be intentional or have the element of scienter; in general, legal liability for misrepresentations rests on false statements made either intentionally or negligently. Nothing in Rule 8.4(c) indicates that passive representation was not meant to be covered by the rule. See, Wolfram Modern Legal Ethics, West (1986) 13.5.8. While it has been suggested that the duty against making misrepresentations may be qualified in some cases by the requirement of confidentiality with respect to a client imposed upon an attorney under Rules 1.6 and 4.1, that caveat is not applicable in this case. Indeed, the disclosure to Complainants' attorney of plaintiff's change of circumstances could only have inured to the benefit of Mrs. Clark since it could have resulted in a more timely and competitive offer to purchase by the Complainants.
Plaintiff's claim that he fulfilled all his ethical responsibilities by advising Attorney Elia of his new role was not persuasive on the Committee and is not persuasive on this court. The discussion with Attorney Elia did not absolve the plaintiff from his duty to advise Complainants' attorney of the changed situation, since that was plaintiff's responsibility.
Plaintiff has not argued, and it does not appear to be a requirement, under Rule 8.4(c) that the prohibited misrepresentation be directed to the client of an attorney. The prohibition against misrepresentation applies to any attorney or CT Page 3838 party with whom the attorney is dealing or negotiating.
We conclude that under the facts of this case the conclusion of the Committee was not illegal or an abuse of its discretion or otherwise in violation of any of the categories set forth in Practice Book 27N(f).
Appeal Dismissed.
Wagner, J.