## George P. Gustin Associates, Inc. *v.* Orest T. Dubno, Commissioner of Revenue Services (12835)

Peters, C. J., Dannehy, Santaniello, Callahan and F. Hennessy, Js.

Argued January 13—decision released April 14, 1987

*Lawrence H. Lissitzyn,* with whom was *John M. Horak,* for the appellant (plaintiff).

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

Dannehy, J. The issue in this case, which comes to us by way of reservation, is whether the plaintiff's contributions to a retirement plan on behalf of its officers and shareholders constitute "other compensation paid to" such persons within the meaning of General Statutes § 12-219 (1) (B) (ii). An affirmative response to this question would require that these contributions be added back to the plaintiff's net income for purposes

of determining its tax base under § 12-219 (1) (B). The plaintiff, George P. Gustin Associates, Inc., appealed to the Superior Court from a decision of the defendant commissioner of revenue services assessing a deficiency in the plaintiff's corporate business tax liability for the tax year ending January 31, 1982. The trial court granted the request for reservation upon stipulated facts, to determine whether the defendant had properly calculated the plaintiff's tax liability. We hold that the reserved question[1] is to be answered in the negative.

The stipulated facts may be briefly summarized. The plaintiff is a Connecticut corporation and as such is subject to the Connecticut corporation business tax (business tax) embodied in chapter 208 of the General Statutes. For the tax year ending January 31, 1982, Connecticut law required that corporations with a gross income over $50,000 calculate their business tax liability under one of three possible bases: (1) the net income base of § 12-214; (2) the "additional" base of § 12-219 (1) (A); or (3) the "new" additional base of § 12-219 (1) (B). Corporations were required to utilize the tax base which produced the highest possible tax liability. Only the third base, that provided for by § 12-219 (1) (B),[2] is of concern to us in answering the

---

[1] The question of law reserved for our advice is: "Whether the plaintiff's contributions to the Retirement Plan on behalf of the plaintiff's officers and shareholders and deducted from gross income in computing net income under Section 12-219 (1) (B) (i) of the Connecticut General Statutes, constitute 'other compensation paid to' such corporate officers and shareholders within the meaning of Section 12-219 (1) (B) (ii) of the Connecticut General Statutes which should be added back to net income for purposes of determining the 'new' additional tax base under Section 12-219 (1) (B)?"

[2] General Statutes (Rev. to 1983) § 12-219 (1) (B) provides: "A tax to be measured by fifty per cent of (i) the net income or loss of such corporation or association but only to the extent that said income or loss is allocated and apportioned to this state, which income is the entire net income as defined in this chapter received by such corporation or association from business transacted within the state during the income year and which loss

reserved question. Under that base, the business tax is computed in a two step process. The first step is to compute the Connecticut net income in the same manner as under the net income base of § 12-214.[3] General Statutes § 12-219 (1) (B) (i). In the second step, the corporation must "add back" to net income the "salaries and other compensation paid to" its officers and to shareholders owning greater than 1 percent of the stock

---

is the net loss of such corporation or association related to business transacted within the state during the income year, plus (ii) salaries and other compensation paid to the elected or appointed officers of such corporation or association and to every shareholder owning in excess of one per cent of the issued capital stock of such corporation or association, apportioned to this state by means of the apportionment fraction determined under subdivision (3) of section 12-218, at the rate of five per cent. The provisions of section 12-219a shall not apply to this subdivision. For purposes of this subdivision, the term 'elected or appointed officer' shall include the chairman, president, vice president, secretary, assistant secretary, treasurer, assistant treasurer, comptroller and any other person, irrespective of his title, who is charged with and performs any of the regular functions of any such officer. A director shall be considered an elected or appointed officer only if he performs duties ordinarily performed by an officer. When a taxpayer has carried on or had the right to carry on business within the state for eleven months or less of the income year, the tax calculated under subdivision (A) of this section shall be reduced in proportion to the fractional part of the year during which business was carried on by such taxpayer. The tax calculated under subdivision (A) or subdivision (B) of this section shall, in no case, be less than two hundred fifty dollars for each income year. The taxpayer shall report the items set forth in subdivision (A) of this section at the amounts at which such items appear upon its books; provided, when, in the opinion of the commissioner of revenue services, the books of the taxpayer do not disclose a reasonable valuation of such items, the commissioner may require any additional information which may be necessary for a reasonable determination of the tax calculated under subdivision (A) of this section and shall, on the basis of the best information available, calculate such tax and notify the taxpayer thereof."

General Statutes (Rev. to 1983) § 12-219 (1) (B) was repealed for tax years beginning on or after January 1, 1983. Public Acts, Spec. Sess., November, 1981, No. 81-4, §§ 30, 32 (6).

[3] Under the net income base of General Statutes § 12-214, the business tax is computed on the basis of the taxpayer's Connecticut net income, which is generally the same as the taxpayer's federal net income (i.e., total or gross income less allowable deductions).

of the corporation (1 percent shareholders). General Statutes § 12-219 (1) (B) (ii).

At all times relevant to this case, the plaintiff maintained a retirement plan for the benefit of all of its employees (retirement plan). The retirement plan is a "qualified" plan under the Federal Employee Retirement Income Security Act of 1974. Accordingly, the plaintiff's contributions to it were deductible from the plaintiff's gross income for purposes of determining the plaintiff's federal net income and for purposes of determining its Connecticut net income under § 12-214. See General Statutes § 12-217 (a).

The plaintiff computed its business tax for the tax year ending January 31, 1982, under the third base, the "new" additional base of § 12-219 (1) (B), and determined that its tax liability was $2745. In calculating this liability, the plaintiff followed the two step process outlined in § 12-219 (1) (B). First, it computed its Connecticut net income and, in doing so, deducted from its gross income the amount contributed to the retirement plan during the year. The plaintiff then added back to net income the salaries and the value of other benefits paid to corporate officers and 1 percent shareholders. The plaintiff did *not* add back to its net income, however, $46,260 which represented the amount the plaintiff contributed to the retirement plan on behalf of its officers and 1 percent shareholders.

The defendant notified the plaintiff by letter of a deficiency in the plaintiff's business tax liability in the amount of $1156 plus interest. The stated reason for the deficiency was that the $46,260 contributed to the retirement plan on behalf of the plaintiff's officers and 1 percent shareholders constituted "other compensation paid to" those persons and, consequently, should have been added back to the plaintiff's net income under § 12-219 (1) (B) (ii). The plaintiff objected for-

mally to the assessment of the deficiency and, pursuant to General Statutes § 12-236, requested a hearing before the defendant to appeal from the assessment. At the hearing, the defendant affirmed its previous determination of the deficiency. The plaintiff then appealed to the Superior Court, pursuant to § 12-237, and it is from that court that the reserved question comes to us. We note that there are presently forty-four appeals pending before the defendant which involve the same question of law which we are asked to resolve today.

Before reaching the merits of the reserved question, we briefly discuss four preliminary matters. First, we note that § 12-219 (1) (B) was repealed for tax years beginning on or after January 1, 1983. Public Acts, Spec. Sess., November, 1981, No. 81-4, §§ 30 and 32 (6). The repeal does not render this case moot, however, since the plaintiff continues to possess the right to seek refunds and to avoid liability for the two years during which the tax was in effect. See *Gunther* v. *Dubno,* 195 Conn. 284, 288, 487 A.2d 1080 (1985). Second, although this case is before us on interlocutory appeal, and is not in the final judgment stage, we nonetheless possess jurisdiction to answer the reserved question. Practice Book § 4147 (formerly § 3133); *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 588, 522 A.2d 771 (1987). Third, because the appeal in this case was from an adverse ruling of the defendant commissioner of revenue services, the plaintiff is not limited to an administrative appeal under the Uniform Administrative Procedure Act, but is instead entitled to a plenary review of its challenge to the defendant's assessment. *Texaco Refining & Marketing Co.* v. *Commissioner,* supra. Finally, because the question on reservation involves the imposition of a tax, as opposed to a claimed right to an exemption or a deduction, we must strictly construe the taxing statute at issue here

against the defendant and in favor of the taxpayer. Id.; see also *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 420–23, 521 A.2d 569 (1987).

The question upon which our advice is sought essentially asks that we interpret the phrase "other compensation" in § 12-219 (1) (B) (ii) to determine whether it includes the $46,260 paid by the plaintiff into the retirement plan. To answer this question, we resort to those principles of statutory construction which are designed to aid us in ascertaining the legislative intent underlying the provision. *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement and to its relationship to existing legislation . . . ." *Texaco Refining & Marketing Co.* v. *Commissioner,* supra, 589; see also *Savings & Loan League of Connecticut, Inc.* v. *CHFA,* 184 Conn. 311, 315, 439 A.2d 978 (1981).

Considering first the language of the statute at issue here, we note that the word "compensation" is not defined in chapter 208 of the General Statutes. The plaintiff maintains that corporate contributions to a retirement plan which will not actually be paid to employees until a future year should not be considered "compensation paid to" them in the year of the contribution. It argues that this interpretation is consistent with federal taxation policy and with our construction of the terms "compensation" and "paid" in prior decisions such as *Kneeland* v. *Administrator, Unemployment Compensation Act,* 138 Conn. 630, 633–35, 88 A.2d 376 (1952), and *Giammattei* v. *Egan,* 135 Conn. 666, 668, 68 A.2d 129 (1949). The defendant, however, argues for a broader interpretation of the term compensation, pointing out that in *Anderson* v. *Pension & Retirement Board,* 167 Conn. 352, 355,

355 A.2d 283 (1974), we explained that compensation had been defined as " 'salary, fees, pay, remuneration for official services performed, in whatever form or manner, or at whatsoever periods the same may be paid.' . . .' "

Since it is not readily apparent from the language of § 12-219 (1) (B) (ii) whether the legislature intended the word "compensation" to encompass payments to retirement plans, we need to examine the legislative history and the policy concerns surrounding the enactment of the provision. When § 12-219 (1) (B) (ii) was originally enacted in 1981, it contained the following provision: "In determining salaries and other compensation for purposes of subparagraph (ii) of this subdivision, there shall be allowed as a deduction from such salaries or other compensation the amount of contributions in any income year by any such officer or shareholder to a retirement plan qualified for tax deferment in accordance with federal income tax requirements, in amounts not in excess of one thousand seven hundred fifty dollars with respect to any such officer or shareholder."[4] Public Acts 1981, No. 81-255, § 22. This provision was repealed shortly after its enactment. See Public Acts 1981, No. 81-411, § 8. It would appear that the repeal of a provision which expressly provided a deduction for contributions to retirement plans reflects a legislative intent that such contributions, although

_____

[4] The parties agree that the reference to retirement plan contributions "*by* any such officers or shareholders" was a technical error. (Emphasis added.) Public Acts 1981, No. 81-255, § 22. The provision should be construed as referring to corporate contributions to retirement plans made *on behalf of* such officers and shareholders. A literal interpretation of the provision would, as the parties note, render the provision a nullity for the 1981 tax year, since there could not be any contributions made "by" officers or shareholders in that year. It was not until tax year 1982, after passage of the Economic Recovery Tax Act of 1981; see 26 U.S.C. § 219; that employees could make contributions to their own retirement plans. Moreover, the focus of the statute is the corporate income and deductions and not the income and deductions of its employees.

originally excluded from a corporation's tax base, must henceforth be added back to the base as "other compensation." Not surprisingly, this argument is proffered by the defendant in support of his position. The weakness of the defendant's position, however, is that the legislative history and policy surrounding both the enactment and the subsequent repeal of the provision involving contributions to a retirement plan leads to a contrary conclusion.

The new additional tax base embodied in § 12-219 (1) (B) was enacted as a parallel provision to the Unincorporated Business Tax, General Statutes § 12-610 et seq. See 24 S. Proc., Pt. 10, 1981 Sess., p. 3308; 24 H.R. Proc., Pt. 15, 1981 Sess., p. 5077. The unincorporated business tax, which has since been repealed; see Public Acts, Spec. Sess., November, 1981, No. 81-4, §§ 31, 32 (7); imposed a 5 percent tax on the taxable net income of unincorporated Connecticut businesses whose gross income exceeded $50,000. General Statutes § 12-611. While certain deductions from gross income were allowed in computing taxable net income; see General Statutes §§ 12-612, 12-615; a business could *not* deduct amounts paid to a proprietor or partner for services rendered. See General Statutes § 12-612 (1).

While the legislature was considering passage of the unincorporated business tax, one of its main concerns was whether unincorporated businesses would incorporate in order to avoid the new tax. See 24 S. Proc., Pt. 7, 1981 Sess., p. 2118. In other words, an unincorporated business, faced with the prospect of paying the new tax, might well decide to incorporate and then to "drain away" its taxable income by paying it to officers and shareholders in the form of salaries, bonuses and other benefits, those amounts being deductible in computing the net income of a *corporation*. See General Statutes § 12-217. The new additional tax base of § 12-219 (1) (B) was added to the corporate tax struc-

ture to prevent this method of circumventing the unincorporated business tax. 24 S. Proc., Pt. 10, 1981 Sess., p. 3308. Under § 12-219 (1) (B) (ii), "salaries and other compensation" paid to officers and 1 percent shareholders, which were deducted in computing the net income of a corporation, were to be added back to net income in calculating the corporation's tax base.

The history of § 12-219 (1) (B) reveals that wherever possible, the legislature attempted to "develop parallelism" between the unincorporated business tax and the corporation tax. 24 H.R. Proc., Pt. 15, 1981 Sess., p. 5077. For example, in computing taxable net income, an unincorporated business was allowed to deduct "the amount of contributions . . . by any proprietor or partner of a taxpayer subject to tax under this chapter for purposes of a retirement plan qualified for tax deferment in accordance with federal income tax requirements, in amounts not in excess of one thousand seven hundred fifty dollars with respect to any such proprietor or partner." General Statutes § 12-615. As previously noted, § 12-219 (1) (B), the corporate counterpart to the unincorporated business tax, originally contained language similar to that found in § 12-615, which created a "deduction" from "salaries and other compensation" for amounts contributed to qualified retirement plans up to $1750 per officer or shareholder. Public Acts 1981, No. 81-255, § 22. From the legislative history surrounding the enactment of § 12-615 and the original § 12-219 (1) (B), it is quite clear the legislature intended that amounts contributed to qualified retirement plans would *not* be included in computing the tax base of *either* a corporation under § 12-219 (1) (B) *or* an unincorporated business. The parties are in agreement on this point. Whether § 12-219 (1) (B), as originally enacted, actually accomplished this purpose, we leave undetermined, for the moment.

Several weeks after passing the unincorporated business tax and the complementary corporate tax provision, the legislature amended the latter by eliminating the sentence allowing a deduction for contributions to retirement plans. See Public Acts 1981, No. 81-411, § 8. The defendant baldly asserts that in amending § 12-219 (1) (B), the legislature, in effect, changed its mind and decided to include in the corporate tax base, corporate contributions to retirement accounts. The legislative history surrounding the amendment, however, indicates otherwise.

Both in the House and the Senate, the amendment was referred to as being "technical" in nature. 24 S. Proc., Pt. 17, 1981 Sess., p. 5532; 24 H.R. Proc., Pt. 24, 1981 Sess., p. 8158. Representative Otto C. Neumann, the sponsor of the amendment, explained that under § 12-219 (1) (B), as originally enacted, contributions to retirement plans were deducted twice. The "basic thrust" of this "housekeeping" amendment, he explained, is "to eliminate one of those two deductions, so that in essence, there would not be a double deduction." 24 H.R. Proc., Pt. 24, 1981 Sess., p. 8156. Senator Audrey P. Beck echoed this explanation when the amendment was considered by the Senate. 24 S. Proc., Pt. 17, 1981 Sess., p. 5532.[5] The amendment was rapidly passed by both Houses. Nowhere in the legislative history of the amendment is there any indication that the legislature intended to implement a substan-

---

[5] Senator Audrey D. Beck's comments on the amendment were as follows: "Mr. President, I move acceptance of the committee's favorable report and favorable action on the bill as amended by the Senate and as amended by the House, House Amendment Schedules A and B. . . . Sec. 2, or House Amendment B rather, deletes from the alternate corporation tax base allowance for deduction for pension contribution. We had pointed out on the floor that there already is a deduction as a business expense under the corporate profit tax and in the writing of the bill, although it was read by four people, we did not see that we were really providing a double deduction. So these two are technical in nature and I move acceptance of House Amendment Schedules A and B." 24 S. Proc., Pt. 17, 1981 Sess., p. 5532.

tive change in the computation of the corporate tax base. Instead, it appears that the legislature believed it had erroneously drafted § 12-219 (1) (B) to provide two deductions, when it actually intended that there be only one, as in the complementary unincorporated business tax provision.

It is salient to recall that the unincorporated business tax and the corporate tax base of § 12-219 (1) (B) were intended to parallel one another. When the legislature amended § 12-219 (1) (B) (ii) to eliminate the provision concerning contributions to retirement plans, it left intact the complementary deduction allowed to unincorporated businesses under § 12-615. If, as the defendant maintains, the legislature intended, in amending § 12-219 (1) (B), that contributions to pension plans be *included* in the tax base of a corporation but *not included* in the tax base of an unincorporated business, this would mark a radical departure from the declared policy of parallel treatment between the two areas of taxation. Such a major change in legislative policy, we believe, would not have occurred without some sort of opposition or at least discussion in the legislature. The legislative history of No. 81-411 of the 1981 Public Acts, however, is silent with regard to any decision to depart from the policy of parallel treatment. A change of this magnitude certainly cannot be considered "technical" in nature.

Our conclusion that contributions to a retirement plan like the one at issue here were not intended to be included in a corporation's tax base under § 12-219 (1) (B) is further supported by an examination of the mechanics of taxation under § 12-219 (1) (B) as originally enacted and as amended. The defendant's brief contains a chart which illustrates the formula for taxation under the original § 12-219 (1) (B). We reproduce that chart as an aid to our discussion:

"1. GROSS INCOME

2. – ALLOWABLE DEDUCTIONS (which includes inter alia officer's salaries and corporate contributions to a qualified plan)

3. = NET INCOME

4. + OFFICERS' SALARIES AND OTHER COMPENSATION

5. – CORPORATE CONTRIBUTIONS TO A QUALIFIED PLAN

6. BASE
×50%

7. MEASURE OF THE TAX
×  5%

8. TAX"

The parties agree that when the legislature amended § 12-219 (1) (B) (ii) to eliminate the provision concerning contributions to a qualified retirement plan, it essentially eliminated step five in the above chart. The disagreement between the parties centers around step four, in which salaries and other compensation are added back to net income. The defendant contends that this step includes contributions to a qualified retirement plan while the plaintiff argues to the contrary. Our resolution of this dispute is facilitated by looking again to the legislative history surrounding the amendment to § 12-219 (1) (B).

As we have previously stated, the explanation of the proposed amendment was that it would eliminate a so-

called "double deduction" for contributions to retirement plans. Senator Beck explained the necessity of the amendment by saying that, "there already is a deduction as a business expense under the corporate profit tax and in the writing of the bill . . . we did not see that we were really providing a double deduction. . . . So [the amendment is] technical in nature . . . ." 24 S. Proc., Pt. 17, 1981 Sess., p. 5532. The reference by Beck to the deduction which already exists under the corporate profit tax appears on line two in the above chart. The only way in which contributions to retirement plans could possibly be deducted twice, under the original act, is if they were *not* included in line four as "other compensation," for if they were included, and then subtracted out in line five, the two steps would cancel one another out, leaving only the deduction provided for in line two. The defendant, in fact, recognizes this paradox in his brief when he states that if "corporate contributions were not included in . . . line 4, the base on line 6 would be reduced twice by the corporate contributions." This is precisely the double deduction which the legislature believed it had created in § 12-219 (1) (B) (ii), and which it wished to eliminate by amending that statute.

The legislative history of the amendment makes clear, however, that the statute was still intended to provide *one* deduction for contributions to qualified retirement plans. See 24 H.R. Proc., Pt. 24, 1981 Sess., p. 8156. If we were to adopt the defendant's argument that "other compensation" includes contributions to retirement plans, there effectively would be *no* deduction for such contributions under the amended statute. That is, the deduction provided for in line two of the above chart would be nullified if contributions to retirement plans had to be added back on line four as "other compensation."[6]

---

[6] The defendant asserts that if corporate contributions to retirement plans were, under the original act, "deducted" from the "compensation" paid

We find it significant that the defendant does not attempt to dispute or to offer another interpretation of the legislative history surrounding the amendment. Rather, he merely dismisses it in a footnote as "ambiguous," and argues that the statements of one legislator do not always reflect the views of other members or of the legislative body as a whole. We see no reason here to disregard the statements of Representative Neumann, the sponsor of the amendment, and of Senator Beck. Their explanations of the amendment's purpose are consistent, and no other explanation was offered in either house of the legislature.

To briefly summarize our review of the legislative history and policy concerns underlying § 12-219 (1) (B), it is clear that the legislature intended to provide parallel deductions for contributions to retirement plans made by corporations and by unincorporated businesses. This deduction was provided to unincorporated businesses in § 12-615, and was repeated in similar language in the corporate tax provision, § 12-219 (1) (B) (ii), as originally enacted. Believing that it had mistakenly created a *double* deduction for such contributions by a *corporation,* the legislature amended § 12-219 (1) (B) (ii) to eliminate the "deduction" lan-

to officers and 1 percent shareholders, common sense dictates that such person's compensation must include the corporate contributions. While this argument has surface appeal, it conflicts with the expressed legislative intent to eliminate a double deduction. As we have explained, a double deduction would only exist if corporate contributions were *not* included in the phrase "other compensation." We further note that although the original enactment of General Statutes § 12-219 (1) (B) (ii) speaks in terms of a "deduction" for corporate contributions to qualified plans, the provision was referred to in both the House and the Senate as conferring an *exemption* for such contributions. 24 S. Proc., Pt. 10, 1981 Sess., p. 3303; 24 H.R. Proc., Pt. 15, 1981 Sess., p. 5077. It is quite possible that the term "deduction" was a technical error which occurred when the nearly identical language of § 12-615 was carried over to § 12-219 (1) (B) (ii). Had the legislature used the word "exemption," there would not have been the "double deduction" problem which necessitated the elimination of the provision.

guage. The "technical" amendment was not intended, however, to eliminate altogether a deduction for such contributions. In order to effectuate the apparent legislative intent that corporate contributions to retirement plans not be included in the tax base, the phrase "other compensation" in § 12-219 (1) (B) (ii) must be construed to exclude contributions like the ones at issue here. The answer to the reserved question, "Whether the plaintiff's contributions to the Retirement Plan on behalf of the plaintiff's officers and shareholders and deducted from gross income in computing net income under Section 12-219 (1) (B) (i) of the Connecticut General Statutes, constitute 'other compensation paid to' such corporate officers and shareholders within the meaning of Section 12-219 (1) (B) (ii) of the Connecticut General Statutes which should be added back to net income for purposes of determining the 'new' additional tax base under Section 12-219 (1) (B)," is therefore no.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.